docket number 20-1814, Andrews v. United States. Mr. Daniels, you want two minutes for rebuttal, is that right? Yes, Judge O'Malley. Okay, if you're ready to begin, you may do so. I am, thank you. May it please the court, at the outset, let me express our hope that the court not mistake our zeal, whether on behalf of our clients or the law we believe to be controlling as disrespect, whether for the Court of Claims or the government. This is a rails-to-trails case. They have a number of moving parts, typically. Well, this case has no greater number than the usual. They are new and different, and they operate in different ways than perhaps the court below was familiar with prior to that time. The Court of Claims made a heroic effort, in our view, to comprehend what was presented to it, but we believe, in the end, it was mistaken as to how these new and different parts fit together and how they work. Likewise, it ultimately had to resort to an adjudication in order to reach a decision, which we suggest was improper in the context of summary judgment under Claims Rule 56. Mr. Daniels, can I ask this question? This is Judge Toronto, actually, a pair of questions. Is discovery closed and, relatedly, if summary judgments were denied, would there be an opportunity for you all to present additional evidence that is not yet part of what you have disclosed to the other side, or is the record essentially fixed at this point? I believe, Judge, the record is fixed, but for one thing. The court below took judicial notice of certain record facts for the first time, without notice, in the context of its opinion and judgment, and we would, under Rule 201, not to say good practice, be entitled to respond to that. I'm sorry, and what would be those things? Well, those things were what the Court of Claims did was it said, well, I have looked at records archived by the Secretary of State of Florida, and I see that, at various times, the Live Oak, Tampa, and Charlotte Harbor Railway, L-O-T-C-H-R, had professed to be a corporation in other public documents. And, again, that was done for the first time in the opinion from which we appeal. Right. I guess I'm trying to understand, and this is not a unique situation where a matter that, if it went to trial, would be tried to the judge, but the judge has made a determination on summary level, what could reasonably and properly within the rules happen at the trial that would offer any possibility of a different determination than the one the trial judge has made in the context of summary judgment? At any trial, the plaintiffs would be entitled to a rebuttal case after the time that the government had rested in its own case in chief. We would present, the government would present, and we would rebut. That's what a trial would look like. That's not what happened here. Did you seek reconsideration and raise the Rule 201 issue about notice and an opportunity to respond? No. And it may be that, just having done this for 40 years, that nobody wants to see motions for reconsideration. In reviewing this court's decisions, I did not see that a motion under Rule 59 to alter or amend is a precondition to the preservation of any error. And I would the right to respond to notice materials even on appeal, and that's what the notes of the Advisory Committee on Rules say in their commentary to E. And what would your response be to the Secretary of State documents that the court took judicial notice of? Our response would be that the fact that this entity continued to masquerade as a corporation does not satisfy any of the requirements of Florida law regarding incorporation, or either does it overturn the mandate of Florida law that if you're not a corporation, you cannot do business and you can't do business. Did you present any actual evidence that it was masquerading as a corporation? I mean, the fact that it held itself out of the corporation is relevant to the question of whether it was likely incorporated, right? I don't know why it can't be considered to be a masquerade if, in fact, this entity filed what turned out to be, according to the government's proofs, unfileable articles of association because they haven't been signed by the subscribing shareholders, a requirement of Section 1 of Chapter 1987 of Florida statutes, the organizing law that applied at the time, when this corporation did not receive the charter signed not merely by the Secretary of State but by the governor under the great seal of the state of Florida that says you are a corporation, Section 1 of Chapter 1987 declares to be the single act that creates a corporation, absent which a corporation is not created, and when these same promoters apparently successfully organized a corporation, another corporation, the Rollins-Block Railway, at the same time and obtained a charter, yet for 18 months in the period covered by the government's best proof, the report of the Secretary of State, they failed to obtain an actual charter signed by the governor. But the Secretary of State's notice or declaration didn't say they failed to obtain the charter, they just said we have no record one way or the other. And I take that as signifying that they were not a corporation. Why do you take that without additional evidence that the Secretary of State's records are highly likely to be complete, which I don't think I've read anything suggesting that. Well, I haven't, I haven't, I don't know whether in a self-proving document such as this, I need to adduce additional proof to suggest that the certified self-proving document, which is deemed by Florida statute to have prima facie credibility. Right, but just to be clear, the statute that you rely on has two sentences. The second sentence says that if you attach a document, that's prima facie case that the document exists. And that's not what, that's not the applicable sentence. The first sentence merely says that's prima facie evidence of the fact asserted. And as Judge O'Malley said, the only fact asserted here is we don't have it. That's not prima facie evidence of it never existed. I don't know why it's not, Your Honor, given that. That's why I asked about, it seems to me there's an unnecessary second premise, which is our records are really quite likely to be complete. So if we don't have it, it's pretty unlikely that it existed. And I didn't see evidence of that. Well, no, I don't think Your Honor did see any evidence of that. This, this is our position on that. As we have adverted to the Florida statutes in question, the secretary is required to keep and maintain these documents. The reality is, I mean, if they're archived, they, the secretary's statement that it doesn't have them currently would be true, right? No, Your Honor. The secretary must keep in an organized form a book, according to the 1987, Chapter 1987, a book showing all of the railroad corporations that were organized. Okay. It must then annotate on the articles they file, the date of filing and the fact that the secretary received them. And then the final organizing event must occur, which is the issuance of a gubernatorial charter patent certificate. Here the secretary says, I do not have any of these. And I am asking, perhaps I'm asking some court to make a leap that if the secretary who's charged by law with keeping and having these does not have them, they do not exist. And if I can just, just return, this is what we've just been talking about is what led to my initial question about whether the record would still be open for additional evidence of the sort that I think we've just been focusing on as perhaps missing. Well, and I appreciate your suggestion, Judge Taranto. The, yes, to the extent that a further measure of devotion to the truth would require us to obtain a further declaration from the secretary saying, I'm charged by law with keeping all these records. I have all the records going back to this date. All corporations that have juristic existence in the state of Florida have records that are in my possession, and this corporation doesn't have any. I could obtain such a declaration under 28 U.S.C. 1746 and file that. Yes, Your Honor, I could do that. And what about any evidence that corporations that were formed contemporaneously with this one, that the secretary of state has those records? Did you offer anything like that? We did not, Your Honor. That could be obtained with respect to the so-called Rowlands or Rowlands Walk Railway that these same promoters organized. Mr. Daniels, I'm sorry to interrupt Judge Clevenger. Your time is running out. Don't you think we ought to talk about the alternative holding, that there's a de facto corporation here? Yeah, we ought to, Judge. I, we've got a In order to establish a de facto corporation, assuming that that doctrine still exists under Florida law, and we didn't repeat the briefing, but the briefing below indicates that it may have been abandoned when Florida adopted the Uniform Business Corporation Act in 1952 or three or four. As of the time back in the 1800s, there's a four-part test under the Richmond case. Isn't that correct? That's correct, Judge. And didn't the Judge Brugging find that all four of those requirements were satisfied? Yes, he did. But one wonders what proof there was of any of those propositions. In other words, what proof was there that this corporation 140 years ago attempted in good faith to comply with Florida law, other than its defective compliance? Second, whose burden is that? It's going to be the government's as the party seeking summary judgment. Is that a disputed? Oh, no, forget about summary judgment. If it were a tried issue, who has the burden of persuasion on that? That's a kind of threshold question to then what needs to be established as summary judgment. Who has the burden of persuasion on the question of whether the corporation was a de facto corporation? You as the challenger to the government as the one relying on the doctrine. I submit that it's the government as the party relying on this remedial doctrine, in equity or otherwise, that benefits it in the event that the railroad failed to attain status de jure in actual juristic existence. In other words, I cannot conceive of where and how it would be the plaintiff's burden after showing that it had no de jure existence to then rebut in anticipation of what the government might assert a proposition that, oh, well, we didn't need juristic existence. We acted a lot like a corporation, and we had everybody that dealt with the signed documents saying we were a corporation. Therefore, we became a corporation in effect by desire. I think that's the government's burden, Your Honor, even at a trial. What additional evidence do you think they would have to put in to support that de facto conclusion by the court? Well, they're going to have to. They would have to submit evidence that they attempted in good faith to comply with Florida law in the face of the fact that they knew how to comply with Florida law and did comply with Florida law with regard to the other railroads that they were promoting, but that they somehow failed to do so innocently and fecklessly, right? They'd have to show that. Second, they'd have to show that they maintained this corporate fiction innocently and fecklessly without really knowing that, in fact, they weren't organized and had no powers and could acquire nothing under controlling Florida law. Those are the kind of they would need to adduce. And I understand it's 140 years later, but I'm not sure that if I came in front of this court with a 10b5 case that I could say, oh, judge, these elements are really hard to prove. A bunch of this happened a long time ago. Would you excuse me from having to prove that? So are you saying that your argument is that they, in bad faith, failed to put their names on a document? No, I'm saying I don't have to prove bad faith. They have to prove good faith. Now, it may be that the converse is assumed when proof of good faith is not forthcoming, but they've got the burden to prove good faith. Okay. Before you sit down, the deeds, the three deeds, the Shufer, the Moore, and the Foster deeds, you're not arguing that assuming LOTCHR was a corporation that those deeds were ineffective for purposes of transfer, do you? They are ineffective. In particular, there's only one deed that we need to talk about. That's the Foster deed, which embraces all of the lands of all of the players and all of the rights. But where do you make the argument in your briefs that these are not effective transfers, assuming corporate status? I'm sorry, I cannot cite chapter and verse on that, judge, but this is what we have argued. I can assure you, Your Honor, we have. We have argued that... Yes, and I have argued it to this court in our briefs. I'm afraid I would have to leaf through them to find where it is exactly that we said that, but this is what we did say, and that is that they condemned this property, even after the Shufer deed was executed, and they recited in their condemnation papers that, in fact, they had no title to this property, thus disavowing the Shufer deed. The successor to the same corporation then told the Interstate Commerce Commission in a sworn document, Form 107, early in the 20th century, that the only way they had acquired this property was by condemnation. All that being true then, all they acquired was an easement, according to Florida statute. But does that bind the government in this case, if the deeds say what they say on their face? It probably does, because the government may not stand in the shoes of the railroad, but the government can assert that the railroad had only a fee, or had a fee simple interest, only if the railroad could itself assert it. If the railroad were judicially stopped from asserting that it had anything other than an easement, the government itself, we say, is likewise prevented from claiming that the railroad had anything other than an easement. Mr. Daniels, it's Judge Klobinger. In the ICC filing, which is at page 640, it shows both acquiring the property by deed through Mary Shufer, as well as by condemnation. Yes, and I can only assume that that is other right-of-way that's not at issue in this case. There are only 11 miles of this right-of-way at issue. And because the 73- It's the same property. I was reading what the ICC filing was, was that the successor and interest railroad reporting to the ICC says they're not sure how they got it. They either got it by a deed or by condemnation. Well, I'm going to yield to your honor- Or both. If that's what your honor saw, then I yield to that interpretation, to what your honor saw. That, however, does not erase the fact that they disavowed the Shufer deed, under which the government now claims, by filing condemnation papers reciting that they had no And if they did condemn, and they did, by fully following the Florida laws that then existed, all they got was an easement pursuant to the Florida statute, contemporaneous statute, that we've cited. And I think I have- You made the argument that we should apply the Mills case here. But it's true, as the government says, that the Mills case is different, because in that case there weren't any deeds at all to point to. But I didn't see you arguing that we should apply Mills, but in the circumstances here, we may never know the truth as to whether or not the railroad was properly incorporated, nor we may ever know whether it had sufficient good faith to establish a de facto corporation. And if the case, for example, was tried to a jury, the jury might come back and say, we can't really hear it in that direction. It's a tie. However, I think my argument in that case, we should have a default, since we know the railroad ran an easement over the property for several years, to treat the case as if it were like Bill's. That is actually what we're saying. That analytically, the lack of a deed, let's say by a bona fide juristic corporation, is the same as the lack of ability to get a deed or anything other means of title by a corporation that didn't exist. And that in fact, Your Honor has hit the nail on the head. There's a set of true unimpeachable facts here, and that is that under whatever color of right, they put a railroad there, and they ran trains over it, just like in Mills. And just like in Mills, they would have acquired an easement, even if they could have acquired nothing else. Okay, counsel, I think there must be something wrong with the tones, because they haven't been ringing, but it's been 20 minutes. So I think you're way past your time. We'll still give you two minutes for rebuttal, because I didn't catch that there had been some kind of a technical glitch. You're very gracious, Your Honor. Okay, and then let's hear from the government. Good morning, Your Honors, and may it please the court, Caitlin Shugart-Schmidt on behalf of the United States. Your Honors, the crux of this case is that the judge below properly considered the facts before it and appropriately held that Wachter was either properly incorporated or acting as a de facto corporation at the time of the Schubert deed, which transferred fee simple title of the properties at issue. That decision should be affirmed. Let's go. Can we start with the second part, the de facto part? Of course, Your Honor. What's the answer to your question as to whose burden it would be to establish that it was or was not a de facto corporation? Your Honor, I think in this case, the plaintiffs here are attempting to invalidate this transfer of the fee, and so it's their burden to show that Wachter wasn't capable of receiving the deed at the time. But I actually don't think it matters because if you look at the actual case law from Florida regarding what it means to be operating in good faith, case law, which plaintiffs have repeatedly refused to engage with, I think that case law makes clear that there is plenty here to show that Wachter was operating in good faith at the time of the Schubert deed. And I would be happy to go through those cases if it would be helpful. What evidence, though, is there of an innocent mistake? Well, the only requirement in the test for operation of a de facto corporation that deals with the idea of an innocent mistake is that the omission of any essential requirements of the law or charter had to have been unintentional. And in this case, it's not possible for the only possible mistake or omission that's been identified by any of the parties here is the possible lack of issuance of the certificate. And that lack of an issuance of a certificate, if that even did occur, could not have been intentional on the part of Wachter because it was not Wachter's responsibility to issue the certificate. What about the signatures of the subscribers? Your Honor, if you actually look to the Articles of Association, I think it's very telling that what they actually say at the end, and this is on page, I believe it's 988 of the record, although there's a colored copy at 981, it's a little bit easier to read. It actually indicates there that, quote, the names subscribed to the said articles are the genuine signatures of the person's names therein, and that it is intended in good faith to construct and maintain and operate, that I believe it says something like railroad in the said Articles of Association, sworn and subscribed before me this 21st day of July, 1881. And so although plaintiffs seem to be pointing to this case from the late 20th century, dealing with whether or not a warrant was appropriately signed by saying that there was a signature lacking on that warrant, and therefore subscription requires a signature, I don't think that that's relevant. I think we can look to the actual Articles of Association here and say, see that not only do they obtain, or not only do they contain signatures, but they also contain a self-assertion that says, you know, we certify that the Articles of Association were sworn and subscribed on this particular date. Just so I understand, I think you said that the innocence requirement under the Florida de facto corporation law applies only to mistakes. Seemed to me there were two possibilities. One is the signatures of the subscribers. The other is the signatures of the governor and the secretary of state. And you're saying that the first are present. You can just tell that they're present and no contrary evidence. So that leaves something that's not in just the governor and secretary of state, and that's not in Lochter's control. So it's not, it's sort of immaterial. Is that, do I understand? That's correct, Your Honor. Yes. And I think that that's all important to keep in mind because the essential element of good faith here, and I think this is well established in the Florida case law that we do have, isn't that there is some sort of, you know, look into the heart and determine, you know, did someone have good feelings when they attempted to incorporate the corporation? The real test is whether or not they essentially acted in such a way that indicated knowledge that they were doing something that they shouldn't have, right? Were they attempting to operate with full knowledge that they weren't incorporated because they hadn't yet thought to be incorporated? Or were they not able to undertake an action because they knew that they didn't fulfill the statutory requirements for undertaking that action? And all evidence here points to the idea that Lochter, you know, properly filed its articles of association, and we have a notation that they were received. We have further evidence of it reporting corporate activity as it was supposed to, participating in judicial proceedings, et cetera, and no evidence that any of that occurred in any manner that would have been inconsistent with the law. And so although we think that there is a very solid argument here that Lochter was operating as a properly incorporated corporation, at bottom, it was certainly acting as a de facto corporation at the time of the... Did the government make any attempt to determine whether or not the Secretary of State had incorporation records for contemporaneously incorporated corporations? In other words, it's that all of the things from 140 years ago are either, you know, missing or archived or that only some of them are missing. Unfortunately, Your Honor, I believe, as far as I know, the answer to that is no, that no party made an attempt to gather evidence about other corporations that were operating at the same time or were incorporated at the same time period. I do think that Your Honors are accurate in noting that, you know, the 2018 certification obtained by plaintiffs that indicates that the records of the Department of State don't disclose incorporation by the name of Lochter are not particularly useful because the 2019 certification, which is on page 986 of the record, specifically notes that, quote, the records of the Live Oak, Tampa, and Charlotte Harbor Railroad Company were transferred to the custody of the State Archives of Florida pursuant to the provisions of Chapter 257. And Chapter 257 specifically notes that once those records are transferred, the State Archives are the official custodians. So nobody made a request to the archives? Well, I think the request for the request that was made to the archives in this case that the certification is attached to is the request that provided the Articles of Association that we do have in the record. Okay. And that's how we know that they're the genuine articles and that they were received and filed. I'm a little confused about one thing. When the Secretary of State certified that he didn't have a record of incorporation by this name, do we know whether the Secretary was checking the State Archives as well as archives that were in the Secretary of State's office or only the Secretary of State archives? I don't know, Your Honor. All I know is what plaintiffs have provided, which is just this simple statement, which just has the certification. Was there any practice at the time for the Secretary of State to have it published or to require publication in any newspaper or periodical of the fact of incorporation? Your Honor, I can't recall from my reading of the statute whether or not that was part of the requirement. I know it was part of the requirements for condemnation proceedings later in the statute, but I'm sorry. I can't recall if that was true for Section 1 or Section 2. Okay. Speaking of condemnation proceedings, is there any reasonable explanation for why the railroad would have undertaken the condemnation proceedings if it had actually purchased the property and had it transferred to it under either the Shuford or the Foster-Deeps? I would be happy to provide, Your Honors, with a theory, but I have to say it is just a theory. And my understanding of railroads operating in this area at the time was that there were actually two competing railroad companies that were attempting to place railroads in almost identical areas of Florida here, and there was a lot of competition between the two about who was actually going to build the line, if they were both going to build lines, if one was going to become a branch of the other, if they were going to become merged. And that actually explains a lot of the sort of strangeness we have in the 1883 to 1884 Secretary's Report, which talks about a merger and a consolidation and a branch opening and et cetera. So my theory is that railroad companies were trying to pursue any avenues that they had to make sure that they had the appropriate property at the time. I think the district court used, or the CFC used some terminology like this was the Wild West of railroad operation at the time, and it's simply possible that one hand wasn't entirely aware of what the other hand was doing when they were attempting to gather this property and build this rail line. But I think it's important to note that not only were the condemnation proceedings not concluded, and I would be happy to discuss that, but once the deed was transferred, the property was owned by Lochter, and so any condemnation proceedings could not have been effective because there was no property to condemn that they did not already own. How do we know they were not concluded? Well, Your Honor, what we know is that we have no evidence in the records that Lochter actually paid anyone for the condemnation or for the takings. And... We have an aversion by a certain interest to the United States government. I'm sorry, Your Honor. You broke up a little bit there, and I couldn't hear the whole question. We have an aversion by the successor in interest that they paid $76 to the court to get the condemnation title. I'm sorry, and where is Your Honor pulling that from? ICC filing. Right. Well, the ICC filings are certainly confusing, as you noted, regarding the particular property at issue and whether or not it applies to this one or whether or not it had already been transferred. Sorry, I'm just trying to pull up that specific one. Representation, is it not, that they paid $76 to the circuit court? How else can you read that? Well, it's difficult to know what it means to potentially have paid money to someone who doesn't own the property at issue anymore. And if we were going by that, it was already transferred by a deed. My point is that you're arguing that the proof that was no conclusion of the court proceeding was there's no evidence that money was paid. And what I see as a representation was, was the ICC filing done under oath? I don't know the answer to that, Your Honor. I believe that those were records presented by the plaintiff, so I would hope that they would have that answer for you. Thank you. What I would also note is that the plaintiff also noted regarding those filings that it's sort of unclear what properties we're talking about and it's unclear, you know, if that was the proper order of events that occurred as represented in that document, it seems clear that the deed, the Schufer deed transferred the properties. And so, you know, even if they later chose to, for example, to pay additional money, that wouldn't have negated the original deed from operating. And I also want to point out here that plaintiffs are sort of trying to have this both ways where they're saying Lochter wasn't a properly incorporated corporation for the purpose of the Schufer deed. Yet it was a properly incorporated corporation in order to be able to engage in the condemnation proceedings. And that simply doesn't make any sense because if it was properly incorporated or if it was acting as a de facto corporation, then it was able to take property through the Schufer deed and that should end the inquiry. If it wasn't, then not only could it not participate in the Schufer deed, it also couldn't participate in the condemnation proceedings. And a simple assertion that it was capable of participating doesn't actually, wouldn't actually have meant that it was capable of participating. So plaintiffs are sort of trying to have their cake and eat it there. Given all these factual nuances, why wouldn't it have been more appropriate for the court to decide this question at trial? Why did you invite a summary judgment when there were so many factual issues? Your Honor, I think because here there are certainly some evidentiary gaps that are not ideal. I think everyone would agree that this case would be simpler if, say, you know, we actually had the certificate in front of us. But the lack of certain evidence like that in front of us doesn't actually negate the evidence that we do have. And the evidence that we do have indicates that Lochter filed this article of association and that those were accepted. And so plaintiffs haven't pointed to any additional evidence or fact-finding, even when asked by Your Honors now. They haven't really identified any specific saying that they say that they would bring to trial that would negate any of those, that would actually affirmatively negate any of the evidence that we do have here. And so based on the evidence that we do have in front of us, it seems appropriate to make a determination that based on the evidence we have, we're applying the law and coming to the conclusion that Lochter was properly incorporated or acting as a de facto corporation. What is your view about the scope of new evidence that the plaintiffs could introduce at trial at this point? If they went out and got new declarations from the Secretary of State to try to figure out what exactly the earlier certification meant or expanded the question to other corporations around the same time or looked at newspaper filings or dug up some new information, is that still a possibility or is there something about the scheduling or discovery closure or something like that? That means we are operating on a fixed record at this point with the possible exception of response to judicially noticed material, I don't know. Well, Your Honor, I think that there was an opportunity for plaintiffs to do all of that and they elected not to. And so it seems a little strange to give them a second opportunity to go do that. And if I may just answer, I'd say that I think it's also important to note here that the only judicially noticed evidence that plaintiffs are objecting to is this 1883 to 1884 Senate report. And while that provides additional collaborating evidence for the existence of Locker, it's not actually necessary to make that determination. So even if plaintiffs had some opportunity to respond to that, it would be immaterial because you could completely eliminate that evidence and still reach the exact same conclusion. I'm sorry, I just want to, you said it would be strange if they had the opportunity. Can you get one step more legalistic about this? Is there something about the CFC rules in general or in terms of orders in this case that would preclude or would either allow or preclude the creation and introduction of new evidence at a trial if summary judgment were reversed? No, Your Honor. I don't have anything further to provide on that point. Although I would be happy to look into that and get back to you with some additional information. My larger point was just that plaintiffs had this opportunity to provide more evidence in this case to do the type of additional inquiries that have been discussed here. And they elected not to. So we have the evidence that we have before us. And I think that evidence is certainly sufficient to conclude that Locker was either operating as a properly incorporated or de facto railroad and thus obtained this property through the Schieffer deed transfer. Okay. Is there anything else you want to add since Mr. Daniels went way over? No, and I think I'm over my time.  No, thank you, Your Honor. All right. Mr. Daniels, you'll have two minutes. I'll be brief, Your Honor. First off, with regard to the jurat that appears in appendix at page 988, that's a jurat for the signatures of the three incorporators as required under section one of chapter 1987. You do not see the signatures of all of the incorporators. You don't see a signature of Mr. George Foster. You don't see a signature of Mr. Drain. You don't see a signature of Mr. Hardy. You don't see a signature for Mr. Renwick. And these are all subscribers who were required under Fourth of the Law to subscribe, i.e. sign these articles. So you don't see that. Yes, you see an acknowledgment where the three incorporators attest that these are their true signatures, as probably they should. But they are not attesting as to any other signatures, indeed, because no other signatures appear on this document. Second, with regard to Judge Clevenger's question, I misspoke, which is not atypical. But no, I don't believe, Judge Clevenger, that the 107 was signed under oath. Well, obviously, theoretically, it's a solemn document presented to this all-important administrative agency at the time with the intent so as to invite credence by that agency. But there's nobody who acknowledges at the end that it's under oath or under penalty of perjury or whatever. And I think I'm probably just about done, Your Honor. Yes, you are. But I think there's one more question, is there? No? Okay. Mr. Daniels, there is one thing I do want to say. I know you opened up saying you didn't mean to be disrespectful, but your briefs were really disrespectful. And I think you just ought to consider that in the future when you're submitting things in writing to the court. I'm sorry, Your Honor. And yeah, I'm sort of an old dog who just tends to bite. I do apologize. I certainly will be happy to apologize to the Court of Claims in writing and to this court in writing if Your Honor prefers. No, I don't think that's necessary. But Judge Breznik has done this for a long time, and he's a very careful and thoughtful judge. I agree with that. That doesn't mean we always agree with him, but he is. He treated us very well. And we did not, you know, I'm sorry, Your Honor, that Your Honor has that impression that it's not what we intended to give. Okay. Thank you, counsel. All right. I thank both counsel. The case will be submitted, and the court is adjourned. Thank you. The Honorable Court is adjourned until tomorrow morning at 10 a.m.